# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 92-469** |
| **GERALD ELWOOD** | **SECTION I** |

## ORDER & REASONS

Before the Court is *pro se* defendant Gerald Elwood's ("Elwood") motion[1] to reduce his sentence to time-served pursuant to 18 U.S.C. § 3582(c)(1)(A). The government opposes the motion.[2] Elwood also filed a motion[3] to appoint counsel to represent him in connection with his § 3582(c)(1)(A) motion. The government takes no position as to whether the Court should appoint counsel.[4] For the reasons that follow, the Court denies both motions.

## I.  BACKGROUND

On August 27, 1993, a jury found Elwood guilty of one count of conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846, two counts of murder in aid of racketeering activity in violation of 18 U.S.C. § 1959(a), one count of assault with a deadly weapon in aid of racketeering activity in violation of 18 U.S.C. § 1959(a), and two counts of violating the Federal Gun Control Act of 1968.[5] On December 15, 1993, Elwood was sentenced to a term of life imprisonment.[6] On July

---

[1] R. Doc. No. 1342.
[2] R. Doc. No. 1351.
[3] R. Doc. No. 1343.
[4] R. Doc. No. 1351, at 1 n.1.
[5] R. Doc. No. 1302, at 1.
[6] R. Doc. No. 3, at 26–27.

1

29, 1997, Elwood was granted partial relief pursuant to 28 U.S.C. § 2255 when another section of this Court vacated his convictions for the two counts of violating the Federal Gun Control Act.[7] Since then, Elwood has filed a number of unsuccessful § 2255 motions, including in 2000, 2004, and 2005.[8]

The Court notes that the instant motion is Elwood's second motion for compassionate release pursuant to § 3582(c)(1)(A). On August 4, 2022, Elwood filed a *pro se* motion for compassionate release on the grounds that he was concerned about the risk of contracting COVID-19 in prison, that he suffered from medical conditions including heart disease, high blood pressure, and high cholesterol, that he had surgery for a torn meniscus in his right knee in May 2021, and that he took pain medication which complicated the management of his high blood pressure.[9]

The Court found that Elwood's medical records demonstrated that he was receiving appropriate medical care for his conditions in prison and ultimately held that Elwood's conditions did not qualify as "extraordinary and compelling" reasons justifying release since his conditions were not life-threatening and did not appear to substantially diminish his ability to provide self-care while incarcerated.[10] The Court also rejected Elwood's arguments relating to the validity of his convictions because those arguments were more appropriately advanced in a successive motion pursuant to 28 U.S.C. § 2255 following authorization from the Fifth Circuit Court of Appeals.[11]

---

[7] R. Doc. No. 1302, at 2.
[8] *See id.*
[9] R. Doc. No. 1289.
[10] R. Doc. No. 1302, at 6–8.
[11] *Id.* at 8–12.

In its order and reasons, this Court also held that compassionate release was unwarranted considering the 18 U.S.C. § 3553(a) factors.[12]

Following the U.S. Sentencing Commission's recent amendments to the relevant policy statement, Elwood filed the instant compassionate release motion. Elwood argues that extraordinary and compelling reasons warrant a sentence reduction because his sentence qualifies as an "unusually long sentence" and because the Supreme Court's decisions in *Apprendi v. New Jersey*,[13] *Alleyne v. United States*,[14] and *United States v. Booker*[15] have changed the law such that, if Elwood were sentenced today, his sentence would be significantly lower.[16]

## II.   STANDARDS OF LAW

### a. Motion to Appoint Counsel

There is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."). In the context of 18 U.S.C. § 3582(c)(2) motions, which are "analogous" to motions pursuant to 18 U.S.C. § 3582(c)(1)(A) like Elwood's, "the Fifth Circuit has held that defendants have no statutory or constitutional right to counsel." *United States v. Joseph*, No. 15-307, 2020 WL 3128845, at *1 (E.D. La. June 12, 2020) (Vance, J.) (citing *United States v.*

---

[12] *Id.* at 12–17.
[13] 539 U.S. 466 (2000).
[14] 570 U.S. 99 (2013).
[15] 543 U.S. 220 (2005).
[16] R. Doc. No. 1342, at 8–14.

3

*Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) and *United States v. Moore*, 400 F. App'x 851, 852 (5th Cir. 2010) (per curiam)).

"Although a defendant [filing] a § 3582(c) motion does not have a statutory or constitutional right to appointment of counsel, the Court may appoint counsel in the interest of justice." *United States v. Mogan*, No. 14-040, 2020 WL 2558216, at *4 n.29 (E.D. La. May 20, 2020) (Morgan, J.) (quotation and citation omitted); *see* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require"). The interests of justice do not require appointment of counsel where a "defendant's motion does not involve complicated or unresolved issues" or where a defendant proves capable of representing himself *pro se*. *Joseph*, 2020 WL 3128845, at *2 (quoting *Moore*, 400 F. App'x at 852) (internal alterations omitted).

### b. Motion for Compassionate Release

#### i. Exhaustion

Before a district court assesses the merits of a motion for compassionate release, a defendant must show that he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or that "30 days [have passed] from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). The Fifth Circuit has emphasized that "all requests for compassionate release must be presented to the Bureau of Prisons before they are litigated in the federal courts." *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 920 (2020). Failure

to satisfy this prerequisite is not jurisdictional, but exhaustion is a mandatory claim-processing rule that must be enforced if invoked by the government. *Id.* at 468–69. The defendant bears the burden of demonstrating exhaustion. *See, e.g., United States v. Rodriguez*, No. 15-198, 2020 WL 5369400, at *2 (E.D. La. Sept. 8, 2020) (Feldman, J.); *United States v. Castro*, No. 15-309, 2020 WL 3076667, at *2 (E.D. La. June 10, 2020) (Africk, J.).

### ii. *Extraordinary and Compelling Reasons*

A district court "may" grant a reduction in sentence if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "[T]he district court may deny [the defendant's] motion without reaching the Section 3553(a) factors if it determines that he has not identified 'extraordinary and compelling reasons' justifying his release." *United States v. Jackson*, 27 F.4th 1088, 1093 n.8 (5th Cir. 2022).

Before granting a motion for reduction in sentence, a court must also conclude that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The most relevant policy statement, codified at U.S.S.G. § 1B1.13, was recently amended with an effective date of November 1, 2023. *See* U.S.S.G. § 1B1.13. As amended, that policy statement applies to motions brought by the Bureau of Prisons or by the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A). *Id.* § 1B1.13(a). It provides that "[e]xtraordinary and compelling reasons exist under any of the following circumstances or a combination

5

thereof": (1) medical circumstances of the defendant; (2) age of the defendant; (3) family circumstances of the defendant; (4) the defendant having been a victim of abuse while in custody; (5) "other reasons"; (6) a change in law that would "produce a gross disparity" between the defendant's sentence and the sentence likely to be imposed today if the defendant has served at least 10 years of an "unusually long sentence." *Id.* §§ 1B1.13(b)(1)–(6).

### iii. Dangerousness

Additionally, the policy statement requires a court to determine that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" before reducing his term of imprisonment. U.S.S.G. § 1B1.13(a)(2). The § 3142(g) factors are as follows: (1) "the nature and circumstances of the offense charged[;]" (2) "the weight of the evidence against the person[;]" (3)"the history and characteristics of the person[;]" (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release[.]" 18 U.S.C. § 3142(g); *see also United States v. King*, No. 06-cr-658, 2023 WL 7194866, at *6–7 (N.D. Cal. Nov. 1, 2023) (analyzing these factors pursuant to U.S.S.G. § 1B1.13(a)(2)).

### iv. 18 U.S.C. § 3553(a) Factors

If a court determines that extraordinary and compelling reasons exist that warrant a sentence reduction, the court must consider the applicable factors set forth in § 3553(a) in fashioning a new sentence. *United States v. Ciprano*, No. 92-350, 2022 WL 503742, at *4 (E.D. La. Feb. 18, 2022) (Fallon, J.). The burden is on the defendant

6

to convince the district judge to exercise its discretion to grant the motion after considering the 3553(a) factors. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Those factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range [provided for in the U.S.S.G.] . . .
> (5) any pertinent [Sentencing Commission] policy statement—
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

### III. ANALYSIS

#### a. Motion to Appoint Counsel

The Court first considers Elwood's motion for appointment of counsel. Elwood contends that he "raises a complex issue that may be recharacterized as a motion pursuant to Title 28 U.S.C. [§] 2255."[17] Elwood further asserts that certain arguments may be "above and beyond [his] ability . . . to further develop in an effective manner without counsel."[18] As examples, Elwood cites an alleged "[f]actual dispute

---

[17] R. Doc. No. 1343, at 1.
[18] *Id.*

7

concerning Elwood's individual role in the offense" and an alleged "[S]ixth [A]mendment violation in light of *Apprendi*[.]"[19] With respect to the alleged factual dispute, the Court has already explained that, in order to challenge the validity of his conviction based on his claim "that he was not involved in either of the murders for which he was convicted[,]" Elwood must request authorization from the Fifth Circuit to file a successive § 2255 motion.[20] With respect to the purported *Apprendi* issue, the Court finds that—as explained more fully below—its application in this case is not particularly complex.

Further, the Court notes that Elwood has proven himself fully capable of representing himself *pro se* through numerous filings adequately presenting his claims.[21] *See United States v. Delco*, No. 09-57, 2020 WL 4569670, at *2–3 (E.D. La. Aug. 7, 2020) (Ashe, J.) (declining to appoint counsel to a defendant seeking compassionate release, observing that there was no indication that the defendant, who had submitted a twenty-two page brief, was "incapable of adequately presenting his motion *pro se*"); *United States v. Hames*, No. 09-39, 2020 WL 3415009, at *1 (E.D. Tex. June 19, 2020) (denying appointment of counsel for defendant seeking compassionate release who submitted a well-reasoned, albeit ultimately unsuccessful

---

[19] *Id.*
[20] *See* R. Doc. No. 1302, at 12.
[21] *See, e.g.*, R. Doc. Nos. 1288 (*pro se* motion to reduced sentence filed August 4, 2022), 1299 (*pro se* reply brief in support of motion to reduce sentence); 1342 (instant motion to reduce sentence).

8

brief, and provided no basis to suggest that appointment of counsel would help him obtain relief). Accordingly, the Court will deny Elwood's motion to appoint counsel.

### b. Motion for Compassionate Release

#### i. *Exhaustion*

Elwood and the government agree that Elwood has exhausted his administrative remedies.[22] On May 2, 2023, Elwood contacted his prison's Reduction in Sentence ("RIS") Coordinator requesting compassionate release.[23] On August 29, 2023, Elwood received a response from the warden denying his request.[24] On September 1, 2023, Elwood appealed the denial of his request for compassionate release.[25] On September 18, 2023, the warden again denied Elwood's request.[26] Accordingly, more than 30 days have passed from the warden's receipt of Elwood's request and the Court concludes that Elwood has satisfied the administrative exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A).

#### ii. *Extraordinary and Compelling Reasons*

Elwood's argument that extraordinary and compelling reasons warrant a sentence reduction in his case is predicated on § 1B1.13(b)(6) of the policy statement. First, Elwood asserts that, since he has been in federal custody since July 12, 1991,

---

[22] R. Doc. No. 1342, at 5; R. Doc. No. 1351, at 2.
[23] R. Doc. No. 1342-1, at 1.
[24] *Id.* at 2.
[25] *Id.* at 3.
[26] *Id.* at 4.

he has served at least ten years of his sentence, satisfying this element of § 1B1.13(b)(6).[27] The government does not appear to dispute this.

Second, as mentioned, Elwood contends that certain U.S. Supreme Court decisions constitute "change[s] in the law" that would produce a gross disparity between Elwood's present sentence and the sentence likely to be imposed at the time his motion was filed.[28] Specifically, Elwood notes that, pursuant to the Supreme Court's decisions in *Apprendi* and *Alleyne*, any fact that increases a defendant's statutory maximum sentence or mandatory minimum sentence "must be proved to a jury beyond a reasonable doubt—not found by a judge based on the [preponderance] of [the] evidence."[29] Elwood asserts that, before his sentencing, the Court conducted certain independent factfinding "which raised the [m]andatory [m]inimum on [counts] 1, 9, and 10, as well as exceeded the statutory maximum on each count."[30]

Elwood's sentencing judge used the federal guideline for first-degree murder to determine Elwood's base offense level even though Louisiana second-degree murder was the offense of conviction listed in the indictment as to counts 9 and 10. *See Tolliver*, 61 F.3d 1189, 1220–21 (5th Cir. 1995) (affirming the district court's decision in this respect). Because the Court found that first-degree murder is the federal crime most analogous to Louisiana's second-degree murder statute, it cross-referenced the first-degree murder guideline, resulting in a guideline of life

---

[27] R. Doc. No. 1342, at 8.
[28] *Id.* at 8–14.
[29] *Id.* at 9.
[30] *Id.* at 10.

imprisonment. *Id.*[31] According to Elwood, following *Apprendi* and *Alleyne*, a sentencing judge would no longer be permitted to unilaterally apply the first-degree murder cross-reference, and the first-degree murder cross-reference would instead need to be submitted to a jury.[32]

However, as the government points out,[33] *Apprendi* and *Alleyne* hold only that facts which increase a defendant's statutory maximum or mandatory minimum sentence must be determined by a jury beyond a reasonable doubt. These cases do not apply to facts that increase a defendant's sentencing guidelines range. *See United States v. Hinojosa*, 749 F.3d 407, 412 (5th Cir. 2014) (explaining that "the *Alleyne* opinion did not imply that the traditional fact-finding on relevant conduct, to the extent it increases the discretionary sentencing range for a district judge under the [sentencing g]uidelines, must now be made by jurors"). Further, as in *Hinojosa*, nothing in the record suggests that Elwood's sentence was the result of the Court's conclusion that a mandatory minimum or statutory maximum applied. *See id.*; *See also United States v. Doggett*, 230 F.3d 160, 166 (5th Cir. 2000) (noting that "*Apprendi* was specifically limited to facts which increase the penalty beyond the statutory maximum, and does not invalidate a court's factual findings for purposes of determining the applicable [s]entencing [g]uidelines"); *United States v. McWaine*, 290 F.3d 269, 273–74 (5th Cir. 2002) (explaining that *Apprendi* does not apply where the

---

[31] *See also* R. Doc. No. 1342-8 (transcript of hearing in which the Court and the parties discussed the first-degree murder cross-reference and its effect on Elwood's sentencing guidelines).
[32] *See generally* R. Doc. No. 1342, at 10–14.
[33] R. Doc. No. 1351, at 5.

11

sentence is less than the statutory maximum); *United States v. Hebert*, 813 F.3d 551, 563–65 (5th Cir. 2015) (holding that a defendant's 92-year pre-*Booker* sentence based on judicial factfinding of murder did not violate his Fifth or Sixth Amendment rights pursuant to *Apprendi* because the sentence was within the statutory maximum term and did not pose an *Alleyne* problem because the defendant did not show that the court's factfinding increased his mandatory minimum sentence).

The application of the first-degree murder cross-reference did not increase Elwood's statutory maximum or mandatory minimum sentence. Rather, it increased Elwood's *guideline* to life imprisonment. Accordingly, neither *Apprendi* nor *Alleyne* qualifies as a change in law that would "produce a gross disparity" between the defendant's sentence and the sentence likely to be imposed today. U.S.S.G. § 1B1.13(b)(6).

Elwood also asserts that the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005) constitutes a "change in the law" that would produce a gross disparity between his present sentence and the sentence likely to be imposed at the time his motion was filed.[34] In *Booker*, the Supreme Court established that the sentencing guidelines are advisory rather than mandatory. 543 U.S. at 246. Accordingly, at the time Elwood was sentenced, the sentencing judge was bound to sentence Elwood to life imprisonment based on Elwood's sentencing guidelines. By contrast, if Elwood were sentenced today, the sentencing judge would have discretion to vary downward and impose a lighter sentence on Elwood.

---

[34] R. Doc. No. 1342, at 9.

The problem with Elwood's *Booker* argument is that he cannot show that, following *Booker*, he would receive a below-guidelines sentence. As the government points out, Elwood's guidelines sentence would still be life imprisonment following *Booker*. Another district court in the Fifth Circuit was recently confronted with a request to reduce a defendant's pre-*Booker* mandatory life sentence in light of § 1B1.13(b)(6). *United States v. Ramirez*, No. 98-620-1, 2023 WL 6518095, at *2–3 (S.D. Tex. Oct. 4, 2023). That court rejected the defendant's argument that *Booker* constituted an extraordinary and compelling circumstance because a life sentence would still be advisory under the guidelines, and the defendant had failed to convince the court that he deserved a below-guidelines sentence based on the § 3553(a) factors. *Id.* at *3. This rationale applies equally to Elwood.

The Court also notes that the jury found Elwood guilty of murder in aid of racketeering activity pursuant to 18 U.S.C. § 1959(a). *Tolliver*, 61 F.3d at 1217–18. As the government points out,[35] Congress amended this statute such that, as of September 13, 1994, anyone guilty of murder in aid of racketeering is subject to a mandatory minimum of life imprisonment. *See* 18 U.S.C. § 1959(a)(1). There is therefore no indication that *Booker* constitutes a change in law that would produce a "gross disparity" between Elwood's current sentence and the sentence he would receive at the time he filed his motion.[36]

---

[35] R. Doc. No. 1351, at 6–7.
[36] Because the Court finds that there is no change in law that would produce such a gross disparity, the Court need not determine whether the defendant is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" before reducing his term of imprisonment. U.S.S.G. § 1B1.13(a)(2).

13

### *iii. § 3553(a) Factors*

Even assuming *Apprendi*, *Alleyne*, and *Booker* qualified as changes in law that would produce a gross disparity (they do not), Elwood has not met his burden of proving that the § 3553(a) factors warrant his release. *See Ward*, 11 F.4th at 361. In denying Elwood's previous motion for compassionate release, this Court found that—despite Elwood's efforts to better himself, his commendable conduct in prison, and his minimal recidivism risk level—compassionate release was not warranted by the § 3553(a) factors.[37]

Elwood's present motion offers no reason to alter that conclusion. In light of the Court's holding regarding the asserted changes in law, "[t]he circumstances have not changed since [Elwood's] last request for compassionate release was denied" less than sixteen months ago. *United States v. Samak*, No. 91-189, 2023 WL 7002808, at *6 (E.D. La. Oct. 24, 2023) (Morgan, J.). Accordingly, having balanced the § 3553(a) factors, the Court again finds that a sentence reduction is not appropriate.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Elwood's motion to appoint counsel is **DENIED**.

**IT IS FURTHER ORDERED** that Elwood's motion for a sentence reduction is **DENIED**.

---

[37] R. Doc. No. 1302, at 16–17.

New Orleans, Louisiana, February 5, 2024.

                                       _____
                                                    **LANCE M. AFRICK**
                                       **UNITED STATES DISTRICT JUDGE**